Argued and submitted March 1, affirmed June 22, 2016

In the Matter of the Compensation of
Donald L. Allen, Claimant.

Donald L. ALLEN,
*Petitioner,*

*v.*

SAIF CORPORATION
and Little Log Logging,
*Respondents.*

Workers' Compensation Board
1204909; A158848

377 P3d 663

Julene M. Quinn argued the cause and filed the briefs for petitioner.

Julie Masters argued the cause and filed the brief for respondents.

Before Sercombe, Presiding Judge, and Tookey, Judge, and DeHoog, Judge.

**DEHOOG, J.**

Claimant seeks review of an order of the Workers' Compensation Board, in which the board concluded that claimant's rotator cuff injury was a "consequential condition" subject to a "major contributing cause" standard of proof. Claimant challenges that conclusion. Because the board applied the correct legal standard and substantial evidence supports the board's order, we affirm.

We take the following facts from the findings in the board's order. ORS 183.482(7). Claimant was injured while working as a logger, when a falling log struck him behind his left shoulder. Claimant immediately began receiving treatment for that injury, which included an "AC separation" of his left shoulder, and respondent SAIF Corporation—his employer's workers' compensation insurer—accepted his workers' compensation claim for that injury. Multiple examinations conducted over the course of that treatment revealed no apparent injury to claimant's rotator cuff. Over the next decade, claimant received treatment for various other injuries to his left shoulder, but, again, no rotator cuff issues were identified.

Approximately 12 years after the workplace logging accident, claimant's physician, Dr. Butters, diagnosed him with a "partial thickness tear of [his] left supraspinatus" (*i.e.*, a rotator cuff tear in his left shoulder). Butters initially could not determine whether claimant's injury from 12 years before had caused the rotator cuff tear. Butters agreed with a medical summary that SAIF's legal counsel had prepared, which indicated that "he was unable to state that [the logging] injury was the major contributing cause of the rotator cuff tear." However, he added to the summary that the injuries were "probably [the] same," because "AC separation[s] often have related rotator cuff" issues. Butters later clarified that notation in another SAIF summary. He explained "that the association between rotator cuff injury or disease and AC separations is a function of the length of time that an AC separation remains untreated and unrepaired." Because, in part, claimant's AC separation was surgically repaired not long after the logging accident, the rotator cuff tear likely

occurred after the AC separation, and, in Butters's opinion, "the AC separation in this case would have [had] minimal if any involvement in causing the rotator cuff" injury. Butters also agreed "that he was unable to say that either the work incident or the accepted conditions [were] the major cause" of the rotator cuff injury.[1] Butters's opinion was that claimant's initial injury "contributed to some degree to the occurrence of the" rotator cuff injury, but "less than 50 percent for sure."

Another physician, Dr. Weeks, examined claimant's injury on SAIF's behalf. Weeks agreed with Butters that the rotator cuff tear likely occurred after the AC separation. However, Weeks described the tear as "a degenerative phenomenon that would have occurred without the [AC] injury." He believed that the rotator cuff tear was solely "related to degeneration (age) and normal wear and tear." Weeks opined that "100 percent of the cause of claimant's partial rotator cuff tear was degenerative."

Claimant sought compensation for his rotator cuff injury from SAIF. SAIF denied the claim, and claimant sought review before the board, arguing that SAIF had incorrectly characterized the injury as a "consequential condition," and, therefore, had incorrectly concluded that claimant had not met the relevant standard of proof to show that the injury was compensable.

---

[1] Because Butters distinguished between the "work incident" and the "accepted conditions" that resulted directly from the logging accident, we understand his reference to the "work incident" to refer to the accident itself, rather than to the resulting injury, as we have sometimes used that term. *E.g., English v. Liberty Northwest Ins. Corp.*, 271 Or App 211, 214, 350 P3d 470 (2015) (stating that "'[t]he question is whether claimant's *work-related injury incident* is the major contributing cause of the [consequential] condition"' (quoting *Brown v. SAIF*, 262 Or App 640, 656, 325 P3d 834, *rev allowed*, 356 Or 397 (2014) (emphasis added; brackets in *English*))); *Brown*, 262 Or App at 649-50 (reviewing legislative history of ORS 656.005(7)(a)(B) and noting that cosponsor of bill equated term "otherwise compensable injury" in statute with the "work injury," the "industrial injury," the "injury incident," and the *"work incident"* (emphasis added)). Similarly, we have recently clarified that the proper reference point in evaluating consequential conditions is the "compensable injury," rather than the "accepted condition" that is referenced in Butters's summary and elsewhere in the record. *See English*, 271 Or App at 215. However, because the AC separation at issue was both a compensable injury and an accepted condition, the use of the latter term does not affect our analysis.

As relevant here, ORS 656.005(7)(a) distinguishes between two types of compensable injuries.[2] The first type of compensable injury, a direct injury, arises directly from the workplace accident. ORS 656.005(7)(a); *Albany General Hospital v. Gasperino*, 113 Or App 411, 415, 833 P2d 1292 (1992). To recover for a direct injury, the claimant must show that the accident was a "material contributing cause" of that injury. *Gasperino*, 113 Or App at 415. The second type of compensable injury is a consequential condition, which arises from the initial, direct injury, rather than from the workplace accident. ORS 656.005(7)(a)(A); *Gasperino*, 113 Or App at 415. To recover for a consequential condition, the claimant must show that the initial injury was its "major contributing cause"—*i.e.*, that the initial injury was more than 50 percent responsible for the consequential condition. ORS 656.005(7)(a)(A); *Gasperino*, 113 Or App at 415. As we explained in *Gasperino*, "[t]he distinction is between a condition or need for treatment that is caused by the *industrial accident*, for which the material contributing cause standard * * * applies, and a condition or need for treatment that is caused in turn by the *compensable injury*." 113 Or App at 415 (emphases in original).

An administrative law judge (ALJ) rejected claimant's arguments that the rotator cuff injury was not a consequential condition and upheld SAIF's denial, concluding that claimant had not shown that the AC separation was the major contributing cause of the rotator cuff injury. On review, the board modified some of the ALJ's factual findings and supplemented the ALJ's legal analysis, but otherwise adopted the ALJ's decision.

In applying ORS 656.005(7)(a), the board first found that claimant's rotator cuff injury did not arise directly from

---

[2] ORS 656.005(7)(a) provides, in relevant part:

"A 'compensable injury' is an accidental injury, or accidental injury to prosthetic appliances, arising out of and in the course of employment requiring medical services or resulting in disability or death; an injury is accidental if the result is an accident, whether or not due to accidental means, if it is established by medical evidence supported by objective findings, subject to the following limitations:

"(A) No injury or disease is compensable as a consequence of a compensable injury unless the compensable injury is the major contributing cause of the consequential condition."

the logging accident. In support of that finding, the board expressly relied on Butters's opinion that the rotator cuff injury arose after the AC separation and resulted from a combination of factors. The board also noted Weeks's opinion that the rotator cuff tear arose as a result of natural degenerative processes and after claimant's on-the-job injury. Weeks's view was that claimant would have suffered the rotator cuff injury even if the logging accident had never occurred. Accordingly, the board concluded, the material contributing cause standard of proof did not apply.

Next, the board determined that claimant's injury was a consequential condition. In making that determination, the board again relied on Butters's opinion. The board apparently was persuaded by Butters's opinion that the rotator cuff tear likely bore some minimal relationship to the AC separation, but did not result directly from it or the underlying accident.[3] Thus, the board concluded, in order to establish that the rotator cuff tear was compensable under ORS 656.005(7)(a), claimant was required to prove that the AC separation was the major contributing cause of that injury. Because the board ultimately concluded that "the medical evidence [was] insufficient to meet the requisite 'major contributing cause' standard of proof," the board upheld SAIF's denial of the claim.

Claimant now seeks review of the board's decision, arguing that "the board erred in determining [that] the [rotator cuff tear] was a consequential condition." Claimant argues that, in order to have made that determination, the board was required to identify an intervening event between the AC separation and the rotator cuff injury—an "injury or condition that arose from" the AC separation—which, in turn, caused the rotator cuff injury. Claimant further argues that ORS 656.005(7)(a) establishes that the material contributing cause standard is the "default" standard of proof

---

[3] Perhaps because there was no dispute that the AC separation occurred at the same time and as a direct result of the logging accident, the board's order sometimes appears to use the term "work injury" to refer to the AC separation, at other times to refer to the accident that caused that injury, and, at yet other times, to refer to both. Nonetheless, we are able to glean the board's intended use of the term from the context in which it is used, and, as a result, that imprecise use of language does not deprive the board's order of substantial reason.

in a workers' compensation claim, and, because the board relied on evidence that was, as a matter of law, insufficient to establish that the rotator cuff injury was a consequential condition, the board erred in deviating from the material contributing cause standard. Claimant's arguments are based on a misreading of *Gasperino* and our cases following it. Because the board applied the correct legal standard and substantial evidence supports the board's determination that the rotator cuff injury was a consequential condition, we affirm.

Whether the board applied the correct standard of medical causation is a question of law. *Fred Meyer, Inc. v. Crompton*, 150 Or App 531, 533, 946 P2d 1171 (1997). However, whether the board correctly determined that claimant's injury was a consequential condition involves findings of fact, which we review for substantial evidence. ORS 183.482(8)(a); *see English v. Liberty Northwest Ins. Corp.*, 271 Or App 211, 215, 350 P3d 470 (2015) (remanding for board to determine whether claimant's condition was consequential, based on board's evaluation of the evidence); *SAIF v. Pepperling*, 237 Or App 79, 84-85, 238 P3d 1013 (2010) (applying substantial evidence standard of review). In reviewing whether the medical evidence established a direct or consequential connection to the accident, "we determine whether the board's evaluation of that evidence was reasonable." *Pepperling*, 237 Or App at 84-85. And, "[i]n reviewing the board's evaluation of [a medical expert's] opinion, we do not substitute our judgment for that of the board[.]" *Id.* We will revisit the board's factual findings only "when the credible evidence apparently weighs overwhelmingly in favor of one finding and the Board finds the other without giving a persuasive explanation." *Armstrong v. Asten-Hill Co.*, 90 Or App 200, 206, 752 P2d 312 (1988).

As explained above, ORS 656.005(7)(a) distinguishes between a compensable injury, which arises directly out of a workplace accident, and a consequential condition, which, in turn, arises out of the compensable injury. *Gasperino*, 113 Or App at 415. Under ORS 656.005(7), a claimant may seek compensation for either type of injury. Thus, when, as in this case, an injury first arises some time after a workplace accident, the claimant has two potential

paths to recovery. The claimant may allege that the injury is a compensable injury under ORS 656.005(7)(a), because the injury "arose directly, although belatedly," from the workplace accident, or the claimant may allege that the injury is a consequential condition under ORS 656.005(7)(a)(A), because the injury resulted from an earlier compensable injury. *Gasperino*, 113 Or App at 414-15.

In either event, the claimant must prove medical causation and satisfy the relevant standard of proof. *See* ORS 656.266(1); *Gasperino*, 113 Or App at 415. As we have explained above, the material contributing cause standard applies only if the injury arises directly out of the workplace accident. *Knaggs v. Allegheny Technologies*, 223 Or App 91, 95-96, 195 P3d 431 (2008), *rev den*, 346 Or 115 (2009) (explaining "material contributing cause" standard); *Gasperino*, 113 Or App at 415. But, as is the case here, if the board determines that an injury is a consequential condition arising out of an earlier compensable injury, the claimant must prove that the compensable injury was the *major* contributing cause of the subsequent injury. ORS 656.005 (7)(a)(A).

Here, the board rejected claimant's allegation that the rotator cuff tear arose out of the logging accident and accepted SAIF's characterization of that injury as a consequential condition arising out of claimant's earlier AC separation. As we understand claimant's argument, he challenges that conclusion on three grounds, each of which we reject.

Claimant first argues, in essence, that the board wrongly assigned him the burden of proving that his injury was compensable under the Workers' Compensation Law, ORS chapter 656. According to claimant, an injured worker who submits a compensation claim enjoys a presumption that the submitted condition arose directly out of the workplace accident; thus, in claimant's words, the material contributing cause standard that applies to direct injuries is the "default" standard that the board must apply. As a result, claimant maintains, the board erred by applying the major contributing cause standard absent proof that the "default" did not apply.

Contrary to claimant's argument, it is claimant, and not the board, who misapplies the burden of proof. It is true, as claimant points out, that ORS 656.005(7)(a) distinguishes consequential conditions subject to the major contributing cause standard from other compensable injuries. But claimant's argument that that fact renders consequential conditions an "exception" and direct injuries the "default"—and that the board therefore had to apply the material contributing cause standard to his claim—is a *non sequitur.* As we have just explained, ORS 656.266(1) places the initial burden of proving that an injury is compensable on the worker. Where, as in this case, the worker submits a claim on the theory that his or her injury arose directly out of a workplace accident, the worker must prove that the *workplace accident* was a material contributing cause of the injury. Here, as we discuss below, claimant failed to satisfy that burden, and the material contributing cause standard applicable to direct injuries had no further bearing on his claim. *See Gasperino,* 113 Or App at 415. When, as a result, the causal relationship between claimant's compensable AC separation and his submitted rotator cuff condition became the focus of the board's inquiry, the board was not required to apply claimant's preferred material contributing cause standard by "default."

Claimant's second argument is that the board could not apply the major contributing cause standard applicable to consequential conditions without first finding that some intervening condition or event separated his initial, compensable injury from the subsequent, consequential condition for which he sought compensation. In claimant's view, the board erroneously relied solely on the intervening passage of time between the AC separation and the discovery of the rotator cuff tear to find that the latter injury was a consequential condition, an approach that claimant believes runs contrary to our case law. Claimant relies principally on *Gasperino,* and cases following it, for support. Indeed, in an often-cited example from *Gasperino,* we stated, "An example of a condition that is a consequence of a compensable injury might be back strain caused by [an] altered gait resulting from a compensable foot injury." 113 Or App at 415 n 2. And, it is true that, in some of our consequential condition

cases, the causal connection between the workplace accident and the consequential condition did involve some identified intermediate condition. Nonetheless, those cases do not support claimant's view.

For example, in *Vasquez v. SAIF*, 237 Or App 59, 61, 238 P3d 1000, *rev den*, 349 Or 370 (2010), the claimant experienced carpal tunnel syndrome (CTS) that arose after she accidentally injured her hand by striking a wall at work. The hand injury caused her hand to swell to her wrist, and that swelling, in turn, led to the CTS. *Id.* at 61, 64. In concluding that the CTS was a consequential condition, and not a direct injury, we reasoned that the condition resulted from the swelling caused by her initial hand injury, and not from the workplace accident itself. *Id.* at 64. We did not, however, hold that it was necessary to identify an intervening condition between the direct injury to the claimant's hand and the CTS for the latter condition to be considered consequential. Instead, by discussing the manner in which the swelling led to the CTS, we simply explained how the medical evidence in that case showed that the CTS resulted from the hand injury, and not from the underlying work accident. *See id.* (noting that medical evidence did not show that the blow to the claimant's hand caused the nerve compression that constituted CTS).

Thus, as we have recently reiterated, "a consequential condition is an injury or condition that does not arise directly from the industrial accident * * *, *but as a consequence* of an injury or condition caused directly by the industrial accident." *English*, 271 Or App at 215 (emphasis added). So long as the submitted condition arose from a compensable injury rather than an underlying workplace accident, it is immaterial that there is no separately identifiable intervening condition between the compensable injury and the submitted condition at issue.

Finally, claimant argues that the board erred in determining, as a factual matter, that the rotator cuff injury was a consequential condition, because there is insufficient evidence to support the board's determination that the rotator cuff injury did not arise directly from the workplace accident. Thus, we must consider whether substantial evidence

supports the board's factual finding that the rotator cuff injury was a consequential condition that resulted, at least in part, from claimant's AC separation, and not directly from the underlying logging incident. ORS 183.482(8)(c); *see English*, 271 Or App at 215 (characterizing question of medical causation as a question of fact). That is, would "the record, viewed as a whole, * * * permit a reasonable person to make that finding"? ORS 183.482(8)(c). We conclude that it would.

In explaining its finding that the rotator cuff injury was a consequential condition, the board succinctly stated that "Dr. Butters indicated that the [rotator cuff injury] arose as a consequence of the compensable injury." The record supports that finding. For example, as the board characterized Butters's testimony, "Butters testified that claimant's * * * injury [resulting from the logging accident] contributed to some degree to the occurrence of the [rotator cuff injury] but 'less than 50 percent for sure.'" Assuming that the board found it credible, that testimony alone was sufficient to support the board's finding that the AC separation was a medical cause of the rotator cuff injury. *See Pepperling*, 237 Or App at 84-85 ("In reviewing the board's evaluation of [a medical expert's] opinion, we do not substitute our judgment for that of the board[.]").

Notwithstanding that testimony, claimant contends that the evidence did not support the board's finding that claimant's rotator cuff injury arose from the AC separation. In claimant's view, the board could not reasonably rely on Butters's testimony to support that finding, because Butters improperly based his opinion on the sole fact that the rotator cuff injury arose after the AC separation. We agree, in principle, with claimant's argument that the question of whether an injury is a consequential condition is not solely a function of timing. *See English*, 271 Or App at 215 (requiring *causal* relationship between injury caused directly by the industrial accident and the consequential condition). However, viewed in context, Butters's testimony conveyed that the timing of the rotator cuff injury was one of several factors that he considered in determining the likely cause of claimant's rotator cuff tear. That testimony does not suggest that he considered the timing of the rotator cuff tear to be dispositive in

any way. Butters testified that AC separations and rotator cuff injuries are commonly linked, but acknowledged that, given the 12-year gap between the two injuries in this case, he could not determine that the AC separation was a major contributing cause of the rotator cuff injury. Butters's testimony, properly understood in that context, was that the AC separation was a cause of the rotator cuff injury, even though it was not more than 50 percent responsible for that injury.

The question remains, however, whether there was sufficient evidence to support the board's finding that claimant's rotator cuff tear did not arise directly from the workplace accident. Claimant again argues that Butters's testimony was insufficient, because Butters improperly relied on the timing of the rotator cuff injury to conclude that that injury did not arise directly out of the logging accident. We have already rejected that argument. Although Butters testified that claimant's rotator cuff tear did not occur contemporaneously with his AC separation or the underlying workplace accident, that observation was merely one of several factors that informed Butters's ultimate opinion regarding causation. Moreover, as previously noted, the board also considered Weeks's opinion that claimant's rotator cuff tear resulted entirely from natural degenerative processes. Thus, even without Butters's testimony on that point, the record would contain substantial evidence to support the board's finding that the rotator cuff injury did not arise out of claimant's workplace accident.

In short, the board applied the correct legal standard and found that the rotator cuff injury arose as a consequence of the AC separation. Substantial evidence supports that finding. The board did not err in determining that claimant's rotator cuff injury was a consequential condition and that claimant's compensable AC separation was not its major cause.

Affirmed.